HELENE N. WHITE, Circuit Judge,
dissenting.
All agree that there was no procedural unfairness in Stumpf s original sentencing proceeding or at Wesley’s trial. The majority concludes that the proceedings following Wesley’s trial were fundamentally fair as well because, although the prosecutor took inconsistent positions regarding who shot Mrs. Stout, he nevertheless presented all the information to the sentencing court and the court made its decision based on a complete evidentiary record that included Wesley’s and Eastman’s testimony. I agree that the two judges effectively engaged in a resentencing by reevaluating all the evidence. I conclude, nevertheless, that the proceedings on Stumpfs motion for resentencing violated due process because the complete evidentiary record that might have made the proceedings fundamentally fair was presented to a two-judge, rather than the required three-judge, panel.[1] The Ohio Supreme Court concluded that the matter could be decided by a two-judge panel by characterizing the motion as presenting a question of law, not involving guilt or innocence.[2] State v. Stumpf, 32 Ohio St.3d 95, 512 N.E.2d 598, 609 (1987). This characterization of the proceedings as simply a motion to decide whether the new evidence warranted a new sentencing trial, which motion was denied, undermines the premise of the majority opinion — that a complete evidentiary record was presented to the factfinder — and leads to the dissent’s ultimate conclusion that Stumpf was denied due process because fundamental fairness requires that evidence that one defendant was the triggerman, which is regarded by the state as sufficiently reliable to support the death penalty for that defendant, must be presented to the body determining the degree of participation of a co-defendant and whether the death penalty is appropriate for the co-defendant.
I.
Ohio’s death-penalty scheme provides “[i]f the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender *764 was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender,” Ohio Rev.Code § 2929.03(D)(2), and that
if, after receiving ... the trial jury’s recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender.
Id. at (D)(3). Thus, where, as here, the death penalty question is not put to a jury, the decision that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt must be made unanimously by a panel of three judges.
For all the reasons discussed in the dissent, had the death penalty in this case been imposed by a jury, the prosecutor could not have constitutionally argued that Eastman’s testimony at Wesley’s trial was not new evidence of sufficient import and reliability to warrant a new sentencing trial. That, indeed, would have been prosecutorial gamesmanship in violation of due process because it would have been clearly dishonest and disingenuous for the prosecution to take the position that Eastman’s testimony was so unworthy of belief that it would have no impact on the hypothetical sentencing jury’s determination whether Stumpf or Wesley shot Mrs. Stout. And, the issue who was the triggerman is undeniably relevant to the death penalty decision given that one statutory consideration for imposition of the death penalty is the “degree of the offender’s participation in the acts that led to the victim’s death.” Ohio Rev.Code § 2929.04(B)(6).[3]
The prosecutor did not initially take the position that the penalty-phase trier of fact need not consider Eastman’s testimony. Rather, the prosecutor argued that Stumpf was subject to the death penalty without regard to whether he pulled the trigger; that mercy for Wesley did not dictate mercy for Stumpf; and that
[t]he court is not required to accept Eastman’s statement that Wesley admitted being the one who actually fired the gun which killed Mrs. Stout. Even so, as noted above, that finding is unnecessary to imposition of the death penalty. Moreover, the three judge panel which made up the court in this case remains available to determine whether the death penalty would have been imposed even if defendant Stumpf were found not to have actually pulled the trigger ... Only if the court determines that Eastman’s testimony might warrant a different sentence, would a further hearing to take Eastman’s testimony be necessary. Even deleting the finding that Stumpf was the pri[n]cipal offender and actually shot Mrs. Stout, the remaining findings of the court amply support the determination that the aggravating circumstances outweigh the mitigating factors.
(J.A. at 376.)[4] The crux of the prosecutor’s argument in its brief was that the three-judge panel did not have to believe Eastman, but even if it did, Stumpf still deserved the death penalty; and that the court did not have to hear any live testimo *765 ny unless it “determine[d] that Eastman’s testimony might warrant a different sentence.” (J.A. at 376.) At the hearing, when it came to light that the third judge had died, the prosecutor took the position that the two remaining judges could determine “whether or not Eastman’s testimony is of sufficient credibility to warrant further consideration .... whether or not a new trial is warranted on the basis of that evidence.” (J.A. at 2604.)
To the extent the prosecutor’s argument left it to the three-judge panel to look at all the evidence and decide whether and to what extent Eastman’s testimony affected its decision to impose the death penalty, the prosecutor’s conduct was not improper. To the extent the prosecutor dismissed Eastman’s testimony as insufficient to warrant reconsideration of the death-penalty decision, without regard to the outcome of that reconsideration, it violated due process and fundamental fairness because the prosecutor had previously taken the position that the testimony was sufficient to support the death penalty for Wesley.
The majority implicitly regards both the prosecutor’s argument and the two-judge panel’s conduct as advocating and following the first course. At the hearing on Stumpfs motion, Judge Bettis expressed the view that the testimony might make a difference, and he therefore needed to read the transcripts of Eastman’s and Wesley’s testimony to see if the testimony changed his mind. The majority finds it significant that Judge Bettis was able to-read the transcripts and that Judge Henderson heard Wesley’s and Eastman’s testimony live at the time it was given. Indeed, this, along with the fact that two appellate panels also concluded the death penalty was appropriate, provides the core support for the majority’s decision.[5]
There is, however, a fundamental flaw in this reasoning and in the proceedings following Wesley’s trial. The asserted fairness of the proceedings rests on the premise that the legal body that sentenced Stumpf to death pursuant to the Ohio statute considered the evidence that came to light at Wesley’s trial, together with all the other evidence, and nevertheless concluded that the death penalty was an appropriate sentence for Stumpf. But this premise is incorrect. Only two of the judges who initially imposed the death penalty reevaluated that decision in light of the evidence at Wesley’s trial; the other judge had died. This, in my view, undermines the warden’s and the majority’s position. It cannot fairly be contended, as the majority asserts throughout its opinion, that all the evidence was presented to the impartial factfinder for a decision on the entire record, because under the Ohio death penalty scheme the factfinder is a jury or a panel of three judges, and the factfinder must unanimously find that the aggravating circumstances outweigh the mitigating fac *766 tors; the unanimous decision of two judges is insufficient.
Had Stumpf been sentenced to death by a jury and upon attempting to reconvene the jury it was discovered that one of the jurors had died in the interim, it seems clear that the juror would have to be replaced, because under Ohio law, in the absence of a request to the contrary, the defendant has a right to have a unanimous decision of twelve jurors.[6] What occurred here is no different; Stumpf was entitled to a new penalty determination that was based on the entire record including Eastman’s testimony; and he was entitled to a sentence other than death unless a jury or a panel of three judges unanimously agreed on that complete record that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. Further, the independent review afforded by the appellate courts cannot save the two-judge panel’s decision any more than it could save a non-unanimous recommendation of a jury recommending death by an eleven-to-one vote.
II.
The Ohio Supreme Court rejected Stumpf s argument on direct appeal that it was error for the two-judge panel to consider his motion for sentencing:
The [two-judge] panel, upon consideration of appellant’s motion, apparently determined that Eastman’s testimony added insufficient mitigating weight to affect its balancing of the mitigating factors against the aggravating circumstance .... We find no error in that determination. Eastman’s testimony is hearsay and, in the face of the evidence adduced at appellant’s sentencing hearing, of minimal weight. As such, it is too attenuated to warrant a vacation of appellant’s sentence and a new sentencing hearing. We therefore find that the panel did not abuse its discretion in denying appellant’s motion.
[Stumpf] maintains that it was error for only two judges to consider his post-sentence motions, inasmuch as R.C. 2945.06 requires a three-judge panel.... R.C. 2945.06 expressly provides that “[t]he judges or a majority of them may decide all questions of fact and law arising upon the trial * * (Emphasis added.) Unanimity is mandated only when the panel finds a defendant guilty or not guilty. Whether appellant was entitled to ... a new sentencing hearing [was a] question of law, properly determined by a majority of the panel.
Stumpf, 512 N.E.2d at 609.
First, Ohio Rev.Code § 2945.06 also provides that the court “shall follow the procedures contained in sections 2929.03 and 2929.04 of the Revised Code in all cases in which the accused is charged with an offense punishable by death,” which includes the unanimity provision for finding that the aggravating circumstances outweigh the mitigating factors. Second, the Ohio Supreme Court accurately used the qualifier “apparently” because we have no idea *767 on what basis the two-judge panel denied the motion. The court simply stated:
Motion of Defendant filed June 7, 1985 was heard before Judge Henderson and Judge Bettis on October 1, 1985. Defendant’s Exhibits 1, 2, and 3 were offered in evidence. Plaintiff stated that it had no objection to No. 1 and no objection to No. 2 and No. 3 as being transcripts of Eastman and Wesley. Counsel for Defendant and State of Ohio made statements on record. The Court took the matter under advisement and after having considered the same, does overrule the Motion to Withdraw Former Plea and the Alternative Motion to Set Aside the Sentence Imposed.
(J.A. at 379.) Third, the Ohio Supreme Court then imputes conclusions to the two-judge panel that are conjectural, both that the panel found the evidence added insufficient mitigating weight to affect its balancing of the mitigating factors against the aggravating circumstance, and that Eastman’s testimony is hearsay and “too attenuated to warrant a vacation of appellant’s sentence and a new sentencing hearing.” The former decision had to be made by a three-judge panel. We do not know whether the two-judge panel concluded that its earlier finding that Stumpf was the triggerman continued to be sound despite the new testimony, or that even if Stumpf was not the triggerman, that mitigating fact did not outweigh the aggravating circumstances. But, .either way, a three-judge panel was required to make one of those determinations unanimously, beyond a reasonable doubt. If the latter characterization is correct and the two-judge panel simply found the' testimony so attenuated that it was unworthy of serious consideration and did not warrant resentencing, the potential import of the testimony should have been conceded by the prosecutor with the actual import being left to the trier of fact.
In sum, notwithstanding the Ohio Supreme Court’s characterizations of the motion for new sentencing as a question of law and the two-judge panel’s decision as a determination that the evidence was insufficient to warrant a new sentencing hearing, the two-judge panel seemed to recognize that given the relevance of the testimony to the mandatory statutory consideration of the extent of the offender’s participation, it was obliged to reconsider the propriety of the death sentence in light of Eastman’s and Wesley’s testimony, did reconsider the death penalty based on the entire record, and came to the conclusion that the evidence did not change its sentence. This reconsideration was appropriate but could not properly be conducted by a two-judge panel. Alternatively, if the two-judge panel accepted the prosecutor’s secondary argument that Eastman’s testimony was insufficient to warrant reconsideration of the death-penalty decision, without regard to the outcome of that reconsideration, Stumpf was denied due process and fundamental fairness because the prosecutor had previously taken the position that the testimony was sufficiently reliable to support the death penalty for Wesley.
I dissent from the majority decision upholding the death penalty and would grant the writ subject to Ohio providing Stumpf a new sentencing hearing.

. I acknowledge that this issue was not briefed in the present appeal. However, the two-judge panel's authority was questioned throughout the direct appeal. As the Supreme Court has often noted, "death is different." See, e.g., Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Counsel's failure to continue to raise a meritorious issue cannot justify ignoring it in a death penalty case.

. Stumpf’s motion sought leave to withdraw his guilty plea, or alternatively, an order setting aside his death sentence and ordering a new sentencing hearing. (J.A. at 372.) There was no basis to withdraw his plea. At issue is the motion for resentencing.

. This consideration is not controlling on its own. A jury or three-judge panel could conclude that the other factors are such that an offender who did not fire the fatal shot still deserves the death penalty. See Ohio Rev. Code § 2929.04(C)

. The prosecution should have confined itself to the argument that it did not matter who pulled the trigger and honestly admitted that, given the testimony it presented at Wesley’s trial, it could not be certain who shot Mrs. Stout.

. The majority states:
[T]he prosecution presented all of the evidence that it had. The factfinders then had — and took — the opportunity to consider the entire record. First, was Stumpf's original sentencing panel. There [one judge said] ... "I’m gong to read both Eastman and Wesley[’s testimony] ...” The other judge on the panel had presided at Wesley's trial and thus heard Eastman’s testimony live. After considering Eastman's testimony, Wesley's testimony, and the evidence that it had already heard, the panel declined to revisit its earlier determination that the death penalty was appropriate.... A criminal defendant has the right to a fair proceeding in front of an impartial factfinder based on reliable evidence. He does not have the right to prevent a prosecutor from arguing a justifiable inference from a complete evidentiary record, even if the prosecutor has argued for a different inference from the then-complete evidentiary record in another case.
(Majority Op. at 750-51.)

. Ohio Rev.Code §§ 2938.06 (“If the number of jurors to be sworn in a case is not stated in the claim, the number to be sworn shall be twelve, but the accused may stipulate for a jury of six”); 2929.03(D)(2) ("If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender.”); 2945.29 (providing procedure for replacing a juror with an alternate juror, and requiring that in the absence of an alternate, the court may either swear a new juror and begin the trial anew, or discharge the current jury and impanel a new jury); Ohio Crim. R. 24(G) (providing process for seating alternate jurors in capital cases).